**Marguerite MILES, et al., Plaintiffs,**

v.

**AMERICA ONLINE, INC., Defendant.**

**No. 8:00–CV–273.**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 3, 2001.

Lance A. Harke, David J. Maher, and Ricardo Carmona, Harke & Clasby, P.A., Miami, FL, for Miles and Colclasure.

Robert J. Kriss, Eric S. Dreiband, and Jonathan L. Lewis, Mayer, Brown & Platt, Chicago, IL, Nancy Faggianelli, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for AOL.

### ORDER GRANTING PLAINTIFFS' RE-NEWED MOTION FOR CLASS CERTI-FICATION AND DEFINING CLASS

MOODY, District Judge.

This cause came on for consideration on Plaintiffs' Renewed Motion for Class Certification (Dkt.# 74) and Defendant's response thereto (Dkt.# 151). Both parties have filed supplemental pleadings in support of their position on class certification. *See* Dkts. # 165, # 166, # 168, # 169. The Court has also considered the parties' filings on Plaintiffs' original Motion for Class Certification. Plaintiffs filed a lengthy Motion for Leave to File a Reply in Support of their Renewed Motion for Class Certification (Dkt.# 48) and Defendant filed a response in opposition thereto (Dkt.# 159). The Court has also heard the arguments of counsel on February 23, 2001, and subsequently reviewed the parties' requested submissions on subject matter jurisdiction. *See* Dkts.# 174, 175, 178. Upon consideration of the motions, responses, supplemental filings, record evidence, the arguments of counsel, and the Court file, the Court finds that Plaintiffs have met their burden for establishing class certification pursuant to Fed.R.Civ.P. 23 and hereby grants certification of the narrowly-defined class set forth herein.

### FACTUAL BACKGROUND

On February 10, 2000, Plaintiff Marguerite Miles ("Miles") filed a class action Complaint against Defendant America Online, Inc. ("AOL") for violations of Florida's Deceptive and Unfair Trade Practices Act, § 501 *et seq., Fla. Stat.* ("FDUTPA"), and for fraud and fraudulent inducement by omission. Originally, Plaintiff brought this action on behalf of all persons residing in the state of Florida and invoked the Court's diversity jurisdiction. AOL answered Plaintiff's Complaint and then Plaintiff filed an amended class action complaint on April 25, 2000. Plaintiff added a claim for alleged violations of the Computer Fraud and Abuse Act of 1986, as amended, 18 U.S.C. § 1030 (herein-

after referred to as the "CFAA"). Plaintiff then requested leave to file a second amended complaint. Plaintiff added a second Plaintiff/proposed class representative, Patricia Colclasure, a Kansas citizen. Additionally, Plaintiffs added claims that AOL violated other states' statutes prohibiting deceptive and unfair trade practices.

Plaintiffs' claims focus on AOL's conduct in signing up customers for its internet access service through what Plaintiffs describe as a "uniform, standardized advertising and promotional campaign" that induced "tens of thousands of consumers nationwide" to subscribe to and use AOL's internet access service for a "low monthly fee varying in price but averaging $19.95 per month for the use of the service." Plaintiffs further allege that AOL deceived its subscribers by stating that their monthly fee would be "fixed" at $19.95 for "unlimited" internet access. It is Plaintiffs' contention that AOL failed to disclose, or failed to effectively disclose, that its subscribers would most likely incur long distance telephone charges in addition to their monthly AOL fee.[1] Plaintiffs further allege that AOL knowingly impaired the integrity of Plaintiffs' computers "in numerous ways, including but not limited to configuring the computers to dial long-distance numbers to access [AOL's] services, without authorization, and/or directing the transmission or initiation of forced downloads, without authorization" and thereby damaging Plaintiffs.

Plaintiffs propose two national classes. The first class proposed by Plaintiffs includes all AOL consumers from February 15, 1996, to present who subscribed to AOL through an access number and who incurred long distance charges through a "local access number." The second proposed class consists of AOL consumers from February 15, 1998, to present who incurred long distance phone charges in connection with AOL's internet access service and whose computers were damaged by AOL's "configuration" of

---

1. Both Plaintiffs allege that they have incurred unexpected long distance charges in excess of the monthly fee to AOL. Plaintiffs moved to supplement the record in support of their renewed motion for class certification with a "representa-tive sample" of the approximately 4700 written complaints that AOL has received about excessive long distance charges. (*See* # Dkt. 168). These complaints were produced to Plaintiffs after briefing on class certification was completed.

their computer to dial long distance numbers to access AOL's internet service.

AOL defends its conduct on the grounds that it did not deceive consumers and that its uniform disclosures regarding potential long distance charges were sufficient.[2] AOL further contends that the software contained on the disk authorized AOL to perform the activities connected with the provision of internet service once the subscriber agreed to and accepted AOL's "terms of service"

## LEGAL ARGUMENTS

### Subject Matter Jurisdiction

■ As part of the class certification process, the parties were requested to file briefs regarding this Court's jurisdiction over Plaintiffs' claims. In their jurisdictional memorandum, Plaintiffs confirm that they are not invoking the Court's diversity jurisdiction; instead they are proceeding only under the Court's federal question jurisdiction pursuant to 18 U.S.C. § 1030, and requesting the Court invoke supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

To prove a CFAA claim, Plaintiffs must prove that AOL "knowingly cause[d] the transmission of a program, information, code or command, and as a result of such conduct intentionally cause[d] damage without authorization to a protected computer." 18 U.S.C. § 1030(a)(5)(A). The statute defines damage to mean "any impairment to the integrity or availability of data, a program, a system, or information, that ... causes loss aggregating at least $5,000 in value during any one year period to one or more individuals." 18 U.S.C. § 1030(c)(8)(A). AOL contends that Plaintiffs' CFAA claims fail to satisfy the statute because (1) their claimed economic damages are less than $5,000 (and should not be aggregated); (2) AOL did not cause damage to any of plaintiff's computers or cause any "impairment to the integrity or availabil-

ity of data, a program, a system, or information;" and (3) AOL's conduct was "authorized" within the meaning of the statute.

Plaintiffs dispute these contentions, explaining that it is not appropriate at this stage in the litigation to evaluate the merits of Plaintiffs' claims but merely to determine if Plaintiffs can, in good faith, state a claim under the CFAA. If they can, jurisdiction is appropriate. Plaintiffs cite to the legal distinction between the standard for determining the lack of subject matter jurisdiction and that of failure to state a claim upon which relief can be granted under Rule 12(b)(6). See Blue Cross and Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1351 (11th Cir.1998). A federal question claim may only be dismissed for lack of subject matter jurisdiction if "(1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or (2) such a claim is wholly insubstantial and frivolous." Id.

The Court finds that Plaintiffs' CFAA claim does not fit either prong of this standard and finds that Plaintiffs have properly invoked the Court's federal question and supplemental jurisdiction. This ruling does not, however, preclude AOL from later seeking dismissal, if the facts so warrant, as this case proceeds.

### Summary of the Class Certification Arguments

Before addressing the requirements of Rule 23, the Court summarizes the parties' central dispute with regards to class certification. The parties do not appear to contest the requirements of Rule 23(a), commonly referred to as numerosity, typicality, commonality and adequacy of representation. Instead, the central class certification dispute is in the application of Rule 23(b)(3), commonly referred to as the predominance of common issues of fact or law.[3]

---

2. When potential subscribers initially signed on to AOL's service, they went through a series of computer screens, one that requested that the subscriber pick a "local" access number and one that informed the subscriber to verify whether long distance charges apply with their local telephone company.

3. Fed R. Civ. P. 23(b)(3) reads as follows:
   ... [a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual mem-

Plaintiffs contend that common issues of law and fact predominate; that is, whether AOL's advertising and marketing campaign in connection with its internet access service was unfair and deceptive and whether the "configuration" of AOL's service access software impaired the class members' computers. Plaintiffs' argument in support of class certification is founded upon the contention that their proof of AOL's deceptive advertising scheme and access to the consumer's computers so clearly presents common and predominant factual and legal issues, that class certification is the only reasonable and efficient way for this Court to address the hundreds of claims that exist as a result of AOL's conduct. While Plaintiffs acknowledge that their claims may involve some individualized issues related to causation or damages, they suggest that such issues do not override or predominate the case and that class certification is appropriate.

AOL's central theme in opposition to class certification is that individualized issues of reliance and causation defeat any commonality of fact and law and clearly predominate over class-wide issues. Indeed, AOL denies that there are truly common issues, given the varied circumstances of each putative Plaintiff's reliance and knowledge about long distance charges. AOL's response highlights the deposition testimony of Plaintiff Miles to show that she knew that she was dialing a long distance number when she accessed AOL. Thus, AOL urges that class status is inappropriate because there is undisputed evidence from one of the named Plaintiffs that establishes individual circumstances that bear directly on the issue of reliance, a necessary element of Plaintiff's fraud and deception claims. AOL contends that individual issues of other potential class members'

knowledge of long distance and local access numbers and their reliance thereon preclude class certification. In summary, AOL's argument is that "individualized proof" of facts required in what AOL calls a "classic fraud case" make this lawsuit inappropriate for class action status.

### Rule 23 Standards

■ The Court is mindful of the Supreme Court's instruction, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), that a class certification ruling is not a decision on the merits, and that "in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178, 94 S.Ct. 2140. In granting certification, the Court recognizes its continuing duty to monitor the propriety of this decision, and to modify or even vacate this class certification order should the interests of justice so require. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1273–74 (11th Cir. 2000). For that reason, the Court's decision to certify a class in this case should not be viewed as a prediction that the Plaintiffs will ultimately prevail. Simply, at this point, the Plaintiff have met their burden for establishing class certification pursuant tó Fed. R.Civ.P. 23.[4]

The district court has broad discretion in determining whether to certify a class. *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir.1997); *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1566 (11th Cir.1996); *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566,

bers, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely

to be encountered in the management of a class action.

4. In light of the requirement of Fed.R.Civ.P. 23(c)(1) that a class certification decision must be made "as soon as practicable" after the commencement of the action, the standard is necessarily liberal. *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D.Fla.1986); *see also* Local Rule 4.04(b) (named plaintiffs required to move for Rule 23 determination within 90 days following the filing of the initial complaint, unless the time is extended by the Court).

1569 (11th Cir.1992). As a threshold matter, the court must ascertain whether the individual named plaintiffs have constitutional standing to raise their claims. *Murray v. Auslander,* 244 F.3d at 807, 810 (11th Cir. 2001); *Carter v. West Publ'g Co.,* 225 F.3d 1258, 1262–63 (11th Cir.2000); *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266 (11th Cir.2000). It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant, "[r]ather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir.1987). The Court finds that Plaintiffs have standing to raise their claims.

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the requirements for class certification, commonly referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[5] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364; *Jones v. Firestone Tire and Rubber Co.,* 977 F.2d 527, 534 (11th Cir.1992). The burden of proving these prerequisites is on the representative parties seeking class certification. *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir.2000); *Heaven,* 118 F.3d at 737.

Rule 23(a)(1) provides that a class action may be maintained only if the class is so numerous that joinder of all class members is impracticable. There is no yardstick that measures the minimum class members necessary to satisfy the requirements of numerosity. *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D.Fla.1986) (citing *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir.1975)). Numerosity depends on the circumstances of each case. Factors to be considered by the court include the proposed class size, ease of identifying members' names and addresses, case

with which they could be served, and their geographic location, *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986); *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980). It is not necessary that a precise number of class members be known; plaintiffs may make reasonable and supported estimates as to the size of the proposed class. *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D.Fla.2000).

Next, the Plaintiffs must meet the commonality requirement by identifying specifically questions of law and fact common to the named Plaintiffs and putative class members. Class relief is appropriate when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Falcon,* 457 U.S. at 155, 102 S.Ct. 2364 (quoting *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Although the court should not, at the class certification stage, determine whether the plaintiff has stated a cause of action or will prevail on the merits, "evidence relevant to the commonality requirement is often intertwined with the merits." *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 457 (11th Cir.1996) (quoting *Nelson v. U.S. Steel Corp.,* 709 F.2d 675, 679 (11th Cir.1983)).

The third element of Rule 23(a) requires the Plaintiffs to establish that their claims are typical of the claims of the class members as a whole. Plaintiffs may satisfy the typicality requirement upon showing that there is a "strong similarity of legal theories," despite substantial factual variations. *Murray,* 244 F.3d at 811 (quoting *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985)); *see also Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality may be demonstrated where Plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class).

---

5. Rule 23(a) provides:
   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado–Steiman*, 221 F.3d at 1279. Although commonality and typicality constitute two distinct limitations on class certification under Rule 23, they tend to merge in practice. *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364.

Finally, named Plaintiffs must establish the adequacy of themselves and of counsel to represent the putative class. "The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1532–33 (11th Cir.1985), quoted in *Shores v. Sklar*, 844 F.2d 1485, 1495 (11th Cir.1988); *Johnson v. Ga. Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod.*, 521 U.S. at 625–26, 117 S.Ct. 2231 (citing *Falcon*, 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364, and quoting *East Tex. Motor Freight*, 431 U.S. at 403, 97 S.Ct. 1891).

■ At this stage, the Court does not examine the merits of Plaintiffs' claims, but takes the substantive allegations of the second amended class action complaint as true. In doing so, the Court finds that Plaintiffs have met the requirements of Rule 23(a). First, by Plaintiff's supplemental filing of a "representative sample" of over 4700 written complaints received by AOL, the Court is satisfied that the class is so numerous, even as narrowly defined below, that joinder of all members is impracticable.

■ Plaintiffs have met the second requirement of identifying common questions of law and fact among Plaintiffs and putative class members by alleging that AOL's advertising and marketing plan for its internet access service, the access to the user's computer and the "uniform disclosure" regarding phone charges is unfair, deceptive or fraudulent and causes damages to Plaintiffs and their computers. Thus, the alleged conduct arises from the same conduct by AOL. Whether AOL's conduct is fraudulent and/or violates the CFAA and/or the unfair and deceptive trade practice statutes involves common questions of fact and law, using the same legal theories and defenses.

■ Third, Plaintiffs have established that their claims are "typical" of other class members, namely, those AOL members who incurred unwanted and unreimbursed long distance charges in connection with using AOL's internet access service. Finally, the Court finds that Plaintiffs have established that they and their counsel are adequate representatives of this class. Plaintiffs possess the same interests and have suffered the same injury as the class, as defined herein, and their interests are not antagonistic to other class members. Plaintiffs' counsel has represented that they are adequately skilled and experienced to act as class counsel.

If the Plaintiffs establish each of these four factors, they must then satisfy at least one of the alternative requirements of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614, 117 S.Ct. 2231; *Griffin*, 823 F.2d at 1482; *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997). Plaintiffs have elected to proceed under Rule 23(b)(3).

### Rule 23(b)(3) Analysis

■ Plaintiffs argue that AOL conducted a deceptive advertising and marketing campaign which induced consumers to sign up for AOL's service without adequate or sufficient warning that they might incur long distance charges in connection with AOL's internet access service and as a result of the alleged "configuration" of the computer, they, and the "integrity" of their computers, were damaged. Plaintiffs cite cases standing for the proposition that consumer fraud cases, such as this one, are appropriate for class certification. *See e.g. Garner v. Healy*, 184 F.R.D. 598 (N.D.Ill.1999) (finding that individualized issues of reliance do not predominate in case involving "standardized course of conduct involving uniform misrepresentations"). Plaintiffs also argue that class certi-

fication is appropriate for claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See e.g. Latman v. Costa Cruise Lines,* 758 So.2d 699 (Fla. 3d DCA 2000).

Furthermore, Plaintiffs point out that AOL's defense to this action is that it has adequately disclosed to its consumers in its "Terms of Service" agreement the potential of incurring long distance charges in connection with its internet service. Plaintiffs contend that this "adequate and uniform disclosure" defense is just another example of how common issues predominate this case, making it an appropriate one for class action status.

Defendant, on the other hand, cites to consumer fraud and FDUTPA cases where individual issues of reliance and causation precluded class certification. *See* Defendant's response, Dkt.# 151, at 24 (listing cases where courts have refused to certify state consumer fraud cases); *see also Butterworth v. Quick & Reilly, Inc.,* 171 F.R.D. 319 (M.D.Fla.1997) (class certification denied in securities fraud case); *Lance v. Wade,* 457 So.2d 1008 (Fla.1984) (two mobile home purchasers allege fraudulent representations in documents); *Humana, Inc. v. Castillo,* 728 So.2d 261 (Fla. 2d DCA 1999) (fraudulent omissions case regarding HMO information). Defendant asserts that the key issue in this case is what a putative class member knew when he or she selected an AOL access number because if that individual knew that the number was long distance when it was selected, that individual would not have a claim under the theories alleged by Plaintiffs in the complaint. *See Andrews v. American Tel. & Tel.,* 95 F.3d 1014, 1025 (11th Cir. 1996) (refusing to certify class due to necessity of proving "individual reliance").

As Rule 23's Advisory Notes warn, a fraud case may not be well-suited for class status due to "material variations in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." However, the Advisory Notes also find it appealing to use a class device to resolve cases involving "fraud perpetrated on numerous persons by the use of similar misrepresentations." The Court is persuaded

that this case is more similar to the latter circumstance and finds common issues of law and fact predominate over questions affecting individual members as to the provision of internet access service to AOL's customers. Mindful of the issue of individualized reliance that Defendant argues apply to the facts of this case, the Court has fashioned a more narrowly defined class to achieve the economics of time, effort and expense and promote uniformity of decision to similarly situated individuals without sacrificing procedural fairness.

■ Under Rule 23(b)(3), the predominance of common questions is not the only inquiry to determine whether class certification is appropriate. The Court must also look to determine if class representation is "superior" to other available methods for fair and efficient adjudication of the controversy. To do so, the Rule 23(b)(3) identifies a "non exhaustive" list of "matters pertinent to these findings: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

As to these other issues, Plaintiffs have supplemented the record with numerous letters from AOL customers complaining of excessive long distance bills. Plaintiffs explain that these letters (a "representative sample" of 4700 written complaints) are from only one of AOL's six call centers. Accordingly, there are likely to be thousands of potential class members, most of whom would probably not pursue individual lawsuits (especially if the individual had to pursue the claim in Virginia pursuant to AOL's forum selection clause). Each individual's amount is fairly minimal and the cost large for each member to proceed individually against AOL. *See Singer v. AT & T Corp.,* 185 F.R.D. 681 (S.D.Fla.1998). Plaintiffs' counsel contends that they know of no other lawsuits "concerning this controversy."

In light of the issues that relate to the forum selection clause in this case (*see* Dkts. 86, 99, 102, 114, 128, 134), the Court finds that this particular forum is well-suited for this class action litigation. Also, with a narrowly defined class, as proposed below, the Court does not anticipate encountering difficulties in managing this litigation.[6] The Court is satisfied that the economic reality of this case, in terms of time, effort and expense, makes class litigation the superior method for adjudication.

### The Class Definition

█ In order to be certified, a class must be identifiable and clearly defined so as to be "ascertainable without a prolonged and individualized analytical struggle." *Gibbs Properties Corp. v. Cigna Corp.*, 196 F.R.D. 430 (M.D.Fla.2000). Class definition identifies persons who are "entitled to relief, bound by judgment and entitled to notice under Rule 23(b)(3)." *Id.*

█ Thus, to identify a class in this case, the Court finds that Plaintiffs are entitled to certification of a class of individuals who they claim may have been harmed by AOL's conduct, but a class that reflects Defendant's concern that individualized issues of reliance predominate in a proposed class consisting of all consumers using AOL's internet access service. Accordingly, the Court hereby certifies a class of those individuals targeted by AOL's marketing program for its internet access service, who used AOL's service and incurred long distance charges and for whom reliance may be inferred by the class member's conduct. Specifically, the class shall include all AOL members, past or present, who received long distance charges incurred in connection with using AOL's internet access service (through the promotional campaign in question) and who either (1) discontinued AOL's service within seventy-five (75) days of the date of incurring the first long distance charge (regardless of when the bill was received), or (2) changed their AOL access number within seventy-five (75) days of incurring the first long distance charge (regardless of when the bill was received), or (3) communicated with AOL in writing within six (6) months of incurring the first long distance charge (regardless of when the bill was received) with the purpose of complaining about those long distance charges.[7]

Plaintiff has requested that the Court certify two national classes. The Court declines to do so and requests that the parties present their arguments as to the appropriate start date (Plaintiffs propose two different dates: February 15, 1996, and February 15, 1998) and the appropriate cut-off date, if any, for the class as defined above. It is the Court's intent to limit the class to the promotional campaign in question.

### Notice to Class Members

For those classes certified under Rule 23(b)(3), Rule 23(c)(2) requires notice be provided to all class members in a class action, and directs that notice be the "best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Such notice must inform members of their options in terms of remaining in the class; that judgment will include all those individuals who do not request exclusion and that they have to enter an appearance through counsel. The notice must also inform them of their right to "opt-out" of the class if done so by a specified date. Such mandatory notice in class action procedure is designed to fulfill due process requirements. Local Rule 4.04 also requires that Plaintiffs "suggest a means of providing, and defraying the cost of, the notice required by Rule 23(c)(2)."

Plaintiffs propose to use a written notice (similar to one used in another AOL class action in Illinois state court[8]) to individuals identified by their complaints to AOL, or to

---

6. To the extent there are any meaningful state law deviations in the unfair and deceptive trade practice statutes, the Court may choice to create subclasses or decertify those subclasses that are unmanageable. *See* Rule 23(c)(4).

7. Plaintiffs assert in their supplemental filing of a sample of written complaints received by AOL that AOL has a "extraordinarily detailed internal cancellation coding system."

8. Plaintiff does not suggest the appropriate language for the written notice in this case.

"various state agencies," [9] and through unsolicited inquiries to Plaintiffs' counsel and media publication,[10] including a website. AOL did not address the adequacy of Plaintiffs' proposed notice in its response; however, the Court directs the parties to file a joint submission regarding the appropriate written notice for the Court's approval. The Court notes that a website appears to be an appropriate method of notice as it would minimize the expense associated with notice. For those persons who notified AOL of cancellation or complaints regarding long distance charges, AOL is directed (as set forth below) to provide Plaintiffs' counsel with current or last known addresses of such individuals for Plaintiffs to mail such notice.

Also, the "usual rule" is that Plaintiffs must initially bear the costs of furnishing notice. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In its response, Defendant explicitly reserves the right to request that Plaintiff pay the costs associated with identifying members of any class and notice to the individual class members. Accordingly, the Court hereby directs Plaintiffs to pay the costs associated with providing notice of this action.

It is therefore **ORDERED AND ADJUDGED** that

1. Plaintiff's Motion to Supplement the Record in Support the Renewed Motion for Class Certification (Dkt.# 168) is hereby **GRANTED.**

2. Plaintiffs' Motion for Leave to File a Reply in Support of the Renewed Motion for Class Certification (Dkt.# 48) is hereby **DENIED.**

3. Plaintiffs' Renewed Motion for Class Certification (Dkt.# 74) is **GRANTED** and the class is defined as set forth above.

4. The parties are directed to file briefs, no longer than ten (10) pages in length, addressing the appropriate start and cut-off date, if any, for the class, within eleven (11) days of the date of this Order.

5. Counsel for the class is directed to submit to the Court, after conferring with defense counsel, but no later than thirty (30) days from the date of this Order, a proposed form of notice of the pendency of this class action litigation, including a version for electronic posting, and the proposed location and frequency of the notice, for the Court's approval.

6. Defendant shall promptly, but no later than thirty (30) days after the Court's ruling on the start and cut-off dates, file a list of class members as defined herein, by name and address so the mailing of the notice can be effectuated.

---

9. Plaintiffs fail to identify any particular state agencies that they allege have "received hundreds of similar complaints from class members." Upon such a showing, the Court would consider notice being provided to these individuals.

10. Plaintiffs suggest notice in those publications where AOL "typically has advertised its misleading offer of access to its services," but fail to identify those sources or further elucidate on the type or frequency of such publication.